UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| GEORGIA RIVER NETWORK and AMERICAN RIVERS, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 4:10-cv-00267 |
| U.S. ARMY CORPS OF ENGINEERS; LT. GENERAL ROBERT L. VAN ANTWERP, U.S. Army Corps of Engineers; COLONEL JEFFREY M. HALL, U.S. Army Corps of Engineers, Savannah District; RUSSELL L. KAISER, U.S. Army Corps of Engineers, Savannah District, | ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| GRADY COUNTY BOARD OF COMMISSIONERS, | ) ) ) |
| Defendant-Intervenor. | ) |

ORDER

Pursuant to Fed. R. Civ. P. 24(a)(2), Leon County, Florida moves to intervene in this environmental protection case. Doc. 30. For the purposes of its motion, the Court will accept as true the factual assertions set forth in Leon County's motion and in the complaint. "On

May 28, 2010, the United States Army Corps of Engineers (Corps) issued Grady County [Georgia] Board of Commissioners . . . a Clean Water Act permit (Permit) to construct a large fishing lake." Doc. 30-4 at 3. In response, two environmental organizations brought this action to declare the Permit in violation of the Clean Water Act, 33 U.S.C. § 1251 *et. seq.* and other statutes. Doc. 1.[1] The Corps, plaintiffs contend, "improperly approved the Permit based on a flawed angler demand study, an inaccurate wetlands delineation, and an insufficient environmental analysis." *Id.* at 1-2.

Two months later, the Court granted the unopposed motion of the Grady County Board of Commissioners to intervene. Doc. 18. Now Leon County wants to intervene, doc. 30, but Grady County objects, doc. 39, while the plaintiffs and defendants do not. Leon County, located downstream from Grady,[2] complains that the Corps' environmental analysis did not properly analyze the impact this project would have on

---

[1] Even though neither county is in this district, venue is proper. *See* doc. 46.

[2] "Tired Creek is a significant tributary of the upper Ochlockonee River, a river that flows through southwest Georgia into Grady County, Georgia before passing directly from Grady County into Leon County, Florida and making its way to the Gulf of Mexico." Doc. 30-4 at 3 ¶ 4. "Construction of the large dam and 960-acre fishing lake will require the impoundment of sections of Tired Creek and the flooding of more than 129 acres of wetlands and more than nine miles of streams." *Id.* ¶ 6. "Any changes in Tired Creek will be felt by Leon County." *Id.* ¶ 57.

Leon County's lakes, streams, and rivers as well as endangered species within its borders. Doc. 30-4 at 3. It thus cites "potential significant environmental impacts on Leon County." *Id.* at 8.

In opposing Leon County's intervention, Grady County says that Leon County was involved in the lengthy pre-litigation phase of this case (i.e., the Corps' "notice and comment" period) and thus sat on its rights here. The complaint was filed on November 8, 2010, doc. 1, it reminds, yet Leon County failed to move to intervene until April 15, 2011, doc. 30. Doc. 39 at 3-4.[3] And Leon County's intervention, it insists, would complicate its motion to admit non-administrative record materials into this case. Doc. 39 at 5.

Finally, Grady County concludes, Leon County's interests will be adequately represented by the plaintiffs. *Id.* at 5-7. It points out that Leon County's proposed complaint in many instances was "copied word-for-word from the [p]laintiffs' [c]omplaint." Doc. 39 at 7. Leon County replies that its motion is timely, plaintiffs have no incentive to adequately represent its specific, more parochial interests, and

---

[3] It was not referred to the undersigned until June 8, 2011.

3

intervention now will not unduly delay or burden these proceedings. Doc. 43.

## I. GOVERNING STANDARDS

For Leon County to intervene under Rule 24(a)(2), it must show that: (a) its motion is timely; (b) it claims an interest relating to the property or transaction that is the subject of the action; (c) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (d) the existing parties do not adequately represent its interest. *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302-1303 (11th Cir. 2008); *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007); *Shenandoah Riverkeeper v. Ox Paperboard, LLC*, 2011 WL 1870233 at * 2 (N.D.W. Va. May 16, 2011).[4] "An intervenor . . . must continue to meet these requirements throughout the duration of the litigation, as courts must be able to ensure that parties maintain a live interest in a case." *Coalition to*

---

[4] Rule 24 also provides for permissive intervention. That also requires a timely motion, and the intervenor must show a claim or defense that shares a common question of law or fact with the main action. Rule 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Rule 24(b)(3). *See Discount Payment Processing, Inc. v. Applied Card Systems, Inc.*, 2011 WL 2941264 at * 2 (W.D. Pa. Jul. 21, 2011). Leon seeks, in the alternative, permissive intervention here. Doc. 43 at 13-14. Because it qualifies to intervene as of right, it is not necessary to reach that argument.

*Defend Affirmative Action v. Regents of Univ. of Mich.*, ___ F.3d ___, 2011 WL 2600665 at * 23 (6th Cir. Jul. 1, 2011).

## II. ANALYSIS

### A. Timeliness

In addressing the timeliness of an intervention motion, courts generally consider four factors:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely. *United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir.1983).

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 272 F. App'x 817, 819 (11th Cir. 2008), *cited in Bumble Bee Foods, LLC v. Malo, Inc.*, 2009 WL 2762683 at * 2 (S.D. Ga. Aug. 31, 2010).

Leon County's intervention motion is timely. There is no trial date set and the deadline for the plaintiffs' summary judgment motion is not until August 26, 2011. Doc. 49. And there is no meaningful showing that intervention will disrupt the current litigation schedule under which the current parties are operating. In fact, the parties are limited to the

5

administrative record, doc. 47, so there are no discovery issues. Nor have any of the primary parties even argued, much less shown, prejudice. Indeed, they do not even object; only Grady County -- a *fellow intervenor* -- does.

Note, too, that it was Grady County who, in February 2011, beckoned Leon County to pause in intervening. *See* doc. 30-1 at 2 (Letter from Grady's counsel to Leon's Commissioners seeking a pre-intervention conference); *see also* doc. 43 at 5-6 (recounting aftermath showing ultimately fruitless communications into late March, 2011). Even at that, the delay in the filing of Leon County's motion -- just over five months -- falls within a time period deemed timely by other courts in this circuit. *Office Depot, Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA.*, 2010 WL 431886 at * 2 (S.D. Fla. Feb. 3, 2010). Finally, Grady County's only real prejudice showing -- that Leon might complicate Grady's "record motion," doc. 39 at 5 -- is moot, for the district judge has denied that motion. Doc. 47. And Leon County "does not intend to ask the Court to supplement the record." Doc. 43 at 4.

## B. Adequacy of Leon's Interest In This Case

Leon County must show a legally protectable interest, and it must "be one which *substantive* law recognizes as belonging to or being owned by the applicant." *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005). A noncontingent property interest is commonly claimed in intervention cases. It is "the most elementary type of right that Rule 24(a) is designed to protect." *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970), quoted in *Shenandoah Riverkeeper,* 2011 WL 1870233 at * 2; *see also Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1251-52 (11th Cir. 2002) (Florida had a legally protectable interest in, *inter alia*, the quality and quantity of water in the river, river basin, and bay into which the river flowed, for purposes of determining its right to intervene). Here no one disputes that this is a classic "A flushes, B is affected" scenario -- that Leon wants to protect substantial portions of its land from what it claims will be a substantial adverse environmental impact from Grady County's upstream activities. Leon thus easily satisfies this intervention requirement.

## C. Prejudice to Leon's Interest

Leon County also must show whether it will be practically disadvantaged if not permitted to intervene. *See Spring Constr. Co. v. Harris*, 614 F.2d 374 (4th Cir.1980). Some courts have held that the potential for a negative *stare decisis* effect by itself can suffice. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1309-10 (11th Cir. 2004), *cited in Shenandoah Riverkeeper*, 2011 WL 1870233 at * 3. Leon County cites that factor, doc. 43 at 6-7, and also points out that the plaintiff environmental groups may well advance a broad focus (they "may desire a resolution which advances their organizational purpose of protecting and restoring rivers, streams, and wetlands and ensuring effective implementation of environmental laws," doc. 43 at 7), while Leon County, as the "flushee," remains focused solely on avoiding negative effects to itself. *Id.* at 8. It also correctly reminds the Court that "a seat in the courtroom often equates to a seat at the negotiating table," and that is important in this litigation sphere, where negotiated settlements are common. *Id.*

The Court agrees with Leon County that it has met this element. Again, Leon County is the "flushee" here. And it is easy to suppose a

different litigation focus between the "Big Picture" plaintiffs and Leon County here. Plus Leon County, which is geographically adjacent to Grady, has more negotiating leverage with Grady County than do the plaintiffs. Counties are in a position to facilitate if not indirectly influence tourist and other commerce flows into and out of their respective territories. They also can negotiate the sharing of resources in managing cross-border impacts both positive and negative. Environmental interest groups, in contrast, operate completely out of that loop and typically invoke only raw legal leverage.

## D. Adequacy of Representation

"[T]he inadequate representation requirement of Rule 24(a)(2) is satisfied if the [proposed intervenor] shows that representation of his interest may be inadequate, and the burden of making that showing should be treated as minimal." *Naples 9, LLC v. EverBank*, 2011 WL 18846282011 WL 1884628 at * 3 (M.D. Fla. May 18, 2011) (quotes and cite omitted). This factor is "guided primarily by practical considerations, not technical distinctions." *Citizens for Balanced Use v. Montana Wilderness Ass'n.*, ___ F. 3d ___, 2011 WL 3074809 at * 2 (9th Cir. Jul. 26, 2011).

Thus, Leon County need only show that there exists between it and the plaintiffs a reasonable divergence or disunity of litigation strategy, if not ultimate objective. *See id.* at * 4-7 (United States Forest Service did not adequately represent interests of conservation groups in action challenging Service's interim order limiting snowmobile and other motorized and mechanized use in wilderness study area; each side pursued a different scope of environmental restrictions).[5]

Will the plaintiffs in this case adequately represent Leon County's interests? Grady County obviously didn't think *its* interests would be adequately protected by the plaintiffs when it moved to intervene, yet it now contends to the contrary with respect to Leon.

---

[5] Cases with different "ultimate objectives" are easier to decide than those where the plaintiff and proposed intervenor-plaintiff share the same ultimate objective and vary only in strategy if not also specific sub-interests. *Compare M.E.S., Inc. v. United States*, ___ Fed.Cl. ___, 2011 WL 2712732 at * 3 (Fed. Cl. Jun. 30, 2011) ("the minimal burden of establishing inadequate representation of a would-be intervenor's interests by parties already in the suit is satisfied by establishing that no party shares the would-be intervenor's ultimate objective.") (quotes and cite omitted), *with Coalition to Defend Affirmative Action,* 2011 WL 2600665 at * 23 (law student was not entitled to intervene as of right in declaratory judgment action challenging state constitutional amendment prohibiting affirmative action in public education, even though state attorney general had agreed to stipulation to delay amendment's application while student wanted immediate enforcement; the attorney general mounted a firm defense of the amendment and succeeded in convincing the district court to grant summary judgment in his favor). At bottom, the additional representation must not be "a mere makeweight that adds nothing of substance to the debate." *Coalition to Defend Affirmative Action,* 2011 WL 2600665 at * 23.

The Court concludes that sauce for the goose is sauce for the gander. In that regard, it is in "property cases [that] it usually will be easy to show inadequate representation," 7C WRIGHT & MILLER: FEDERAL PRAC. & PROC. § 1909 (3rd ed. 2011), and that especially makes sense in this, a "flush/flushee case" where the original plaintiffs understandably will be inclined to pursue a broader (as opposed to self-interested) focus. In fact, no one has rebutted Leon County's contention that

> [h]ere, an environmental group that has a "purpose of protecting and restoring rivers, streams, and wetlands and ensuring effective implementation of environmental laws" does not have the identical interests of a county solely interested in the impacts to that county alone, regardless of potential beneficial or deleterious impacts on rivers, streams, and wetlands in other areas. . . .
>
> Leon County wants only to prevent negative impacts in Leon County from the proposed project and is *not* opposed to the project if it can be completed in a way that does not harm Leon County. Current Plaintiffs appear to want to prevent the project and/or protect and restore rivers, streams, and wetlands and ensure effective implementation of environmental laws in some other manner as a result of this litigation. Further, current Plaintiffs have so far in this litigation offered no arguments related to the negative impacts on Leon County's waters that will be caused by this project.

Doc. 43 at 10, 11 (emphasis added).

The Court therefore **GRANTS** Leon County, Florida's Motion To Intervene. Doc. 30.

This 1st day of August, 2011.

_/s/ G.R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA